IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

PHILLIP CISNEROS,

    Petitioner,                    No. CIV S-03-0857 DFL DAD P

    vs.

DAVID L. RUNNELS, et al.,

    Respondents.               FINDINGS & RECOMMENDATIONS

_____/

        Petitioner is a state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges a 2001 judgment of conviction entered against him in the Modoc County Superior Court on charges of attempted murder with the use of a firearm, assault with a firearm, making a criminal threat of great bodily injury, being a felon in possession of a firearm, spousal battery with a prior conviction, and carrying a concealed firearm in a vehicle, with an enhancement for having served a prior prison term. Petitioner's sole claim for relief is that jury instruction error at his trial in state court violated his right to due process. Upon careful consideration of the record and the applicable law, the undersigned will recommend that petitioner's application for habeas corpus relief be denied.

/////

PROCEDURAL AND FACTUAL BACKGROUND[1]

A jury found defendant Phillip Cisneros guilty of attempted murder (Pen. Code, §§ 187, subd. (a), 664)[2], assault with a firearm (§245, subd. (a)(1)), making a criminal threat (§ 422), being a felon in possession of a firearm (§ 12021, subd. (a)(1)), spousal battery with a prior spousal battery conviction (§ 273.5, subd. (d)), carrying a concealed firearm in a vehicle (§ 12025, subd. (a)(1)), and carrying a loaded firearm in a vehicle while in a public place or on a public street (§ 12031, subd. (a)(1)).  The jury also found defendant personally used a firearm within the meaning of section 12022.5, subdivision (a)(1), in the commission of the attempted murder, assault and making a criminal threat offenses.  Defendant was sentenced to 20 years in state prison.  Imposition of sentence was stayed for the assault, criminal threats, spousal battery with a prior spousal battery conviction, and carrying a loaded firearm on a public street counts, pending successful completion of the sentence.

* * *

BACKGROUND

On July 30, 2000, victim Rose West was working at the Modoc Medical Center, in the City of Alturas.  At the end of her shift, a nurse alerted her that defendant was waiting for her outside.  Defendant and West have a child together and had been living together until a week and a half earlier.

West met defendant in the parking lot to ascertain what defendant wanted from her.  Defendant gave West an artificial rose and an envelope which he said contained rent money.  He told her he would not bother her anymore.  He said their minister, Dewey Potter, was helping him leave town and that he was going to spend the night at Potter's that evening.  He asked her for a ride to Potter's house, where West was heading to pick up her children.  Potter lived outside of Alturas in Modoc County.

West left the Medical Center with defendant in her car.  When she got into her car, she noticed that the driver's side door was unlocked and the passenger window was rolled down about five inches.  When she had parked the car, the doors were locked and the windows rolled up.  She knew, however, that defendant had a key to her car.

---

[1] The following summary is drawn from the November 18, 2002 opinion by the California Court of Appeal for the Third Appellate District (hereinafter Opinion), at pgs. 1-6, filed on June 2, 2003, as exhibit A to respondents' answer.

[2] Further undesignated statutory references are to the Penal Code.

1
2
3
4
5

West and defendant first made a quick stop at the house they used to share, which was just at the end of the street, so West could use the bathroom. Defendant also packed a duffel bag with a change of clothes. When West returned to the car, she looked into the envelope defendant had given her and saw only a piece of paper instead of money. Defendant asked West if she was going to read the letter he had written. West told him "no." She then drove with defendant to Potter's house.

6
7

On the way to Potter's house, defendant became angry with West for giving another man a ride in her car the evening before. He accused West of having an affair. Defendant yelled at West and then pulled out a gun.

8
9
10
11
12
13

Defendant said he was going to kill himself and pointed the gun to his head. When West urged defendant not to kill himself, defendant placed the gun to her forehead. He swore and screamed at her that he was going to kill her. West heard two clicks and felt the gun jerk, but the gun did not fire. Defendant then took the gun away from her head and started pulling on the slide of the gun as if he were trying to fix it. Again, he placed the gun to West's head and continued to threaten that he was going to kill her. The terrified West was sure she was going to die as she heard more clicks from the gun.

14
15

Defendant again tried to fix the gun, then alternately pointed the gun to his own head and at West's. Defendant then pointed the gun out the window and pulled the trigger. When it did not fire, he tried to fix it again and then resumed pointing it at West's head.

16
17
18
19

As they approached the turn to Potter's house, defendant ordered West to continue past the turn. When West ignored defendant's order and attempted to turn, defendant hit her on the head with the gun. They struggled over the steering wheel but West was able to make the turn. West tried to honk the horn during the struggle in an attempt to make some noise.

20
21
22
23

Once defendant saw that they were getting close to Potter's house, he tossed the gun out of the window. West was crying as she pulled up to Potter's house. She ran inside and told Potter what had happened. Potter took defendant outside and West called the police. The gun, which contained several live rounds and a round jammed in the magazine, was recovered across from Potter's driveway.

24
25

Defendant testified on his own behalf at trial. He explained he had been upset about the state of his relationship with West and the two of them argued in the car. He said he got out the gun to place it in the duffel bag, at which point West started screaming. He said he felt like killing himself and admitted he pointed the gun at his own

26  /////

3

head. However, he denied ever pointing the gun at West or hitting her in the head with it.

Defendant stated that about a month before the incident, Ramos Torres offered to sell him the subject gun. Defendant declined because he was not legally permitted to possess a firearm. Shortly before the incident, Torres stopped by again. Defendant was trying to sell the stereo inside West's car and had discussed this with Torres. Torres looked at the stereo in West's car and decided to purchase it from defendant. Defendant later found out that Torres had accidentally left the gun underneath the front passenger seat of West's car. Defendant had waited until West was at work with the car so he could meet her and retrieve the gun, which he planned to take to Potter.

Torres, however, testified that a few days before the incident, he had sold the gun to defendant in exchange for some speakers. Defendant was supposed to pay him some additional money but never did.

Prior to trial, defendant admitted he had previously been convicted two times of spousal battery under section 273.5 and had served a prior prison term. During trial, both the prosecution and defendant stipulated that defendant had twice been convicted of spousal battery in violation of section 273.5. The prosecution's proof of defendant's prior convictions for those counts requiring such a finding was thereby relieved. The trial court instructed the jury, "So for your purposes the District Attorney doesn't have to prove those priors. By their agreement or stipulation those priors have been proven, and the significance of those shall be made clear as the case goes along."

Later, the trial court instructed the jury with CALJIC No. 2.23, permitting the jury to consider defendant's prior felony convictions for spousal battery in determining the believability of defendant. Specifically, the trial court instructed, "The fact that a witness has been convicted of a felony, if this is a fact, may be considered by you only for the purpose of determining the believability of the witness. The fact of a conviction does not necessarily destroy or impair the witness's believability. It is one of the circumstances that you may take into consideration in weighing the testimony of that witness." Defendant made no objection to the instruction or to the admission of his prior felony convictions for purposes of impeachment.

On appeal, petitioner's conviction on the charge of carrying a loaded firearm in a vehicle while on a public street was reversed and the case was remanded for sentencing. (Opinion at 14.) In all other respects, petitioner's judgment of conviction was affirmed. (Id.)

4

On December 17, 2002, petitioner filed a petition for review in the California Supreme Court. That petition was summarily denied by order dated January 22, 2003.

## ANALYSIS

I. <u>Standards of Review Applicable to Habeas Corpus Claims</u>

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts. See <u>Peltier v. Wright</u>, 15 F.3d 860, 861 (9th Cir. 1993); <u>Middleton v. Cupp</u>, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing <u>Engle v. Isaac</u>, 456 U.S. 107, 119 (1982)). A federal writ is not available for alleged error in the interpretation or application of state law. See <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991); <u>Park v. California</u>, 202 F.3d 1146, 1149 (9th Cir. 2000); <u>Middleton</u>, 768 F.2d at 1085. Habeas corpus cannot be utilized to try state issues <u>de novo</u>. <u>Milton v. Wainwright</u>, 407 U.S. 371, 377 (1972).

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). <u>See</u> <u>Lindh v.Murphy</u>, 521 U.S. 320, 336 (1997); <u>Clark v. Murphy</u>, 331 F.3d 1062, 1067 (9th Cir. 2003). Section 2254(d) sets forth the following standards for granting habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). See also <u>Penry v. Johnson</u>, 532 U.S. 782, 792-93 (2001); <u>Williams v. Taylor</u>, 529 U.S. 362 (2000); <u>Lockhart v. Terhune</u>, 250 F.3d 1223, 1229 (9th Cir. 2001).

/////

The court looks to the last reasoned state court decision as the basis for the state court judgment. Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d). Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000). When it is clear that a state court has not reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the AEDPA's deferential standard does not apply and a federal habeas court must review the claim de novo. Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

II. Petitioner's Claim

Petitioner claims that his right to due process was violated when the trial court instructed the jury that his prior convictions could be used to impeach his testimony. He notes that "this case was purely one of credibility" and states that the victim also had credibility problems. (Pet. at 5.)

The California Court of Appeal rejected petitioner's argument in this regard with the following reasoning:

> Defendant faults the trial court for instructing the jury with CALJIC No. 2.23, allowing it to consider his prior convictions for domestic violence for impeachment purposes. Citing People v. Castro (1985) 38 Cal.3d 301, defendant argues his prior offenses did not bear on his honesty or integrity. Although defendant did not object to the admission of the prior convictions for impeachment purposes or to the jury instruction, he argues he may nevertheless raise the issue because his substantial right to due process was affected. (See § 1259; People v. Floor (1998) 18 Cal.4th 470, 482, fn. 7.) We find no error.
>
> Defendant waived his right to challenge the admission of the prior convictions as not bearing on his credibility by his failure to raise an objection on that ground in the trial court. (People v. Garceau (1993) 6 Cal.4th 140, 179; Evid. Code, § 353.) Moreover, as any objection would not have been well taken, we reject his argument that his due process rights were violated.

> Article I, section 28, subdivision (f) of the California Constitution permits a defendant to be impeached with felonies that necessarily involve moral turpitude. (People v. Castro, supra, 38 Cal.3d at p. 306.) The Supreme Court has defined moral turpitude as a "general readiness to do evil," explaining that it is "moral depravity" of any kind that creates a tendency in reason to shake one's confidence in his honesty. (Id. at pp. 314-315.) The Sixth District has since held that a trial court may properly permit impeachment with a prior conviction for inflicting corporal injury on a spouse or cohabitant in violation of section 273.5. (People v. Rodriguez (1992) 5 Cal.App.4th 1398, 1402 (Rodriguez).)
>
> Defendant argues that Rodriguez was wrongly decided. We agree with Rodriguez, however, that the willful infliction of injury upon "a person of the opposite sex in a special relationship for which society rationally demands, and the victim may reasonably expect, stability and safety, and in which the victim, for these reasons among others, may be especially vulnerable [,]" necessarily connotes the general readiness to do evil that defines moral turpitude. (Rodriguez, supra, 5 Cal.App.4th at p. 1402.) The moral turpitude of this crime goes far beyond that of a simple battery, which does not necessarily include a readiness to do evil.
>
> Thus, evidence of defendant's prior convictions for violation of section 273.5 was properly admitted for impeachment purposes. Additionally, the trial court properly instructed the jury it could consider the prior convictions in determining defendant's credibility.

(Opinion at 7-8.)

In general, a challenge to jury instructions does not state a federal constitutional claim. See Middleton, 768 F.2d at 1085 (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983). In order to warrant federal habeas relief, a challenged jury instruction "cannot be merely 'undesirable, erroneous, or even "universally condemned,"' but must violate some due process right guaranteed by the fourteenth amendment." Prantil v. California, 843 F.2d 314, 317 (9th Cir. 1988) (quoting Cupp v. Naughten, 414 U.S. 141, 146 (1973)). To prevail on such a claim petitioner must demonstrate "that an erroneous instruction 'so infected the entire trial that the resulting conviction violates due process.'" Prantil, 843 F.2d at 317 (quoting Darnell v. Swinney, 823 F.2d 299, 301 (9th Cir. 1987)). In making its determination, this court must evaluate the challenged jury instructions

"'in the context of the overall charge to the jury as a component of the entire trial process.'" Id. (quoting Bashor v. Risley, 730 F.2d 1228, 1239 (9th Cir. 1984)).

Petitioner has failed to demonstrate that the giving of CALJIC No. 2.23 violated his right to due process. The instruction was proper under state law and the prior convictions were clearly relevant to an assessment of petitioner's credibility. Although the jury instruction was proposed by the prosecutor in order to cast doubt on petitioner's trial testimony that he did not intend to harm the victim, the instruction could also have worked to petitioner's benefit. Specifically, the jury was informed that the fact of a prior conviction did not "necessarily destroy or impair" a witnesses' believability but was only one factor to take into consideration in weighing his or her testimony. (Clerk's Transcript on Appeal (CT) at 102.) In addition, that instruction was supplemented with CALJIC No. 2.20, which described a number of factors the jury should consider in evaluating a witness's credibility, including but not limited to the fact of a prior conviction. (Id. at 92-93.) The instruction challenged by petitioner here did not direct the jurors to ignore or discredit petitioner's testimony and it did not allow them to use the prior conviction to establish his guilt.[3]

/////

/////

/////

---

[3] This court notes that in a federal trial a defendant's credibility may be attacked by evidence he was convicted of a crime if the trial court finds that the probative value of the evidence outweighs its prejudicial effect. See Fed. R. Evid. 609. When balancing the probative value of evidence of a defendant's prior convictions against the evidence's prejudicial effect, a reviewing federal court is to consider: "(1) the impeachment value of the prior crime; (2) the point in time of the conviction and the witness' subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of the defendant's testimony; and, (5) the centrality of the defendant's credibility." United States v. Browne, 829 F.2d 760, 762-63 (9th Cir. 1987). See also United States v. Jimenez, 214 F.3d 1095, 1098 (9th Cir. 2000). If a prior conviction is found to serve a proper impeachment purpose, it may be admitted despite its similarity to the offense at issue. Browne, 829 F.2d at 762. Although here petitioner's prior convictions were similar to the charges against him, given the importance of petitioner's trial testimony and the centrality of his credibility to the issue of guilt or innocence, the prejudicial effect of CALJIC No. 2.23 did not outweigh its probative value.

8

Under the circumstances of this case, the giving of CALJIC No. 2.23 did not render petitioner's trial fundamentally unfair. Accordingly, petitioner is not entitled to relief on his claim of jury instruction error.[4]

For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised

/////
/////
/////
/////

---

[4] In the traverse, petitioner claims for the first time that the evidence introduced at his trial was insufficient to support his convictions because the victim "lied under oath." (Traverse at 6-7.) A traverse is not the proper pleading to raise additional grounds for relief. Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994). In order for the State to be properly advised of any additional claims advanced by a petitioner, they must be presented in an amended petition or in a statement of additional grounds. (Id.) To the extent that petitioner is attempting to assert an entirely new claim, it has not been properly raised. In any event, a claim of insufficient evidence in this case lacks merit and should be denied. There is sufficient evidence to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). See also Juan H. v. Allen, 408 F.3d 1262, 1274, 1275 & n.13 (9th Cir. 2005). Rose West's trial testimony alone provided sufficient evidence to support petitioner's conviction on the charges against him. Although petitioner contends that West's testimony was untrue, her credibility was for the jury to decide. United States v. Young, 573 F.2d 1137, 1139 (9th Cir. 1978) ("it is the jury's exclusive function to weigh the credibility of witnesses, resolve evidentiary conflicts and draw reasonable inferences from proven facts"). Because there was sufficient evidence introduced at trial in the form of West's testimony to support petitioner's convictions, he is not entitled to relief on a claim of insufficient evidence.

1  that failure to file objections within the specified time may waive the right to appeal the District
2  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).
3  DATED: March 14, 2007.

*/s/ Dale A. Drozd*
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:8:cisneros857.hc